IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRAYAN JOSE BULA ROCHA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>SAFETY HOLDINGS, INC. D/B/A SAMBA SAFETY,<br><br>　　　　Defendant. | Case No.:<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiff Brayan Jose Bula Rocha ("Plaintiff") brings this action on an individual basis, seeking statutory and other damages against Defendant Safety Holdings, Inc. d/b/a Samba Safety ("Samba") and alleges, based upon Plaintiff's personal knowledge, the investigation of counsel, and upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1. This is an action to recover damages for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

2. The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "background checks" or "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681a.

3. To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to

1

ensure the "maximum possible accuracy" of information contained in consumer reports; and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies.

4. The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

5. Defendant Samba has produced and sold consumer reports concerning Plaintiff's background that contained false, inaccurate, and misleading information about Plaintiff's driving record and criminal history.

6. As a result of Samba's wrongful reporting, Plaintiff suffered damages, including without limitation, harm to his employment qualifications, denial of employment, lost income, and significant emotional distress.

## PARTIES

7. Plaintiff is a natural person and resident of Stamford, Connecticut, and qualifies as a "consumer" as defined and protected by the FCRA.

8. Defendant Safety Holdings, Inc. d/b/a Samba Safety ("Samba") is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f), as it "regularly engages in whole or in part in the practice of assembling or evaluating credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" in exchange for monetary compensation, by means of interstate commerce.

9. Defendant Samba is a Delaware corporation that maintains its primary place of business in Albuquerque, New Mexico.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. Defendant regularly conducts business within the State of Connecticut and violated Plaintiff's rights under the FCRA in the State of Connecticut as alleged more fully below.

11. Venue is proper in this District under 28 U.S.C. 1391(b) because Plaintiff resides in this District and Defendant conducts regular business in this District.

## FACTUAL ALLEGATIONS

12. In or around April 2025, Plaintiff applied to work with Uber as a driver.

13. On or about April 30, 2025, Plaintiff subsequently received notice from Uber that he was being denied employment based in whole or in part on the information contained in the consumer report that Defendant Samba had provided.

14. Upon reviewing the report provided by Defendant, Plaintiff discovered that Defendant was reporting Case No. 24-003248, specifically:

 (a) VIOL: 07/06/2024 ADMINISTRATIVE PER SE FOR DRUGS;

 (b) VIOL: 01/18/2025 INSTALLATION OF IGNITION INTERLOCK DEVICE;

 (c) SUSP: 08/05/2024 - 01/17/2025 ADMINISTRATIVE PER SE FOR DRUGS.

15. Plaintiff was shocked to see that Defendant was reporting this case because on or about April 22, 2025, Plaintiff received official documentation from the DMV stating that Case No. 24-003248 out of Connecticut had been entered in error and that his driver's license suspension had been rescinded.

16. That same day, April 22, 2025, Plaintiff also received a letter from the DMV stating that he had completed all Ignition Interlock Device ("IID") requirements and authorizing the removal of the IID from any vehicle he operates.

17. Plaintiff's most recent DMV Report, dated April 23, 2025, reflects that Plaintiff has no violations on his record.

18. Plaintiff was confused, frustrated, and distressed upon realizing that the inaccurate reporting of his driving and criminal history significantly hindered his employment opportunity as a delivery driver with Uber.

19. Employers routinely rely on background reports to confirm employment eligibility, and any indication that an applicant has been charged with a crime—even if false—will typically result in disqualification from consideration.

20. Because of Defendant's reporting of Case No. 24-003248, Plaintiff's records were inaccurately portrayed as if he had an active suspension and unresolved violations, when in fact the Connecticut DMV had already rescinded the suspension and confirmed that Plaintiff's record was clear.

21. Beyond this application, inaccurate criminal history reporting can have widespread negative consequences, including disqualification from other jobs, ineligibility for housing, and potential damage to reputational standing.

22. Defendant's misreporting of Plaintiff's criminal history not only cost him the employment opportunity with Uber, but also subjected him to unnecessary humiliation, stress, and emotional anguish.

23. Plaintiff was forced to spend considerable time and effort disputing the inaccurate criminal record information with Samba.

24. In May 2025, Plaintiff even reapplied with Uber, attempting to generate a new background check.

25. In response, Uber Support advised Plaintiff that he remained ineligible to work on the Uber platform because of the prior Samba report.

26. On numerous occasions including on or about July 29, 2025, Plaintiff initiated a dispute with Samba, explaining that the reported case at issue in this action was inaccurate, misleading, and damaging and that it should not appear in Plaintiff's consumer report.

27. However, on or about August 4, 2025, Samba notified Plaintiff that Samba determined the information originally reported as accurate and complete.

28. On or about August 6, 2025, Plaintiff emailed Samba, specifically requesting a revised consumer report following his dispute.

29. That same day, Samba informed Plaintiff that he must contact Uber directly to request a new report from Samba.

30. Defendant failed to provide Plaintiff with a revised consumer report reflecting the corrected DMV information, despite his request following a formal dispute.

31. Defendant failed to investigate, remove and/or correct the inaccurate and misleading criminal record.

32. At all times relevant hereto, Defendant's conduct was willful and carried out in reckless disregard for a consumer's rights as set forth under section 1681s, 1681c, and 1681i of the FCRA.

33. As a direct and proximate result of Defendant's violations of the FCRA, Plaintiff has been harmed in his daily life, by the impact that this derogatory information has had on his ability to secure employment while this inaccurate information appears on his consumer file, thereby negatively portraying the Plaintiff's eligibility for employment.

34. Defendant's violations of the FCRA further caused the Plaintiff great distress, annoyance and frustration in his daily life, which he should not have to deal with, and subjected the Plaintiff to abusive credit reporting practices which Plaintiff had a substantive right to be free from.

35. Had Samba put in place reasonable procedures to ensure maximum accuracy, Plaintiff would have been hired by Uber.

36. As a direct result of Defendant's conduct, Plaintiff has been damaged.

37. As a direct result, Plaintiff has suffered severe distress and mental anguish, largely due to the frustration in having such damaging information associated with his character.

38. Upon information and belief, Defendant fails to maintain and employ reasonable procedures to assure maximum possible accuracy of the consumer information it provides to employers.

39. Instead of employing reasonable procedures as required by the FCRA, Defendant blindly collects information from unreliable third-party vendors to repackage and sell in its own employment screening products.

40. Alternatively, upon information and belief, Defendant buys consumer information from third-party vendors that do not have reasonable procedures in place to ensure that the information they sell is of maximum possible accuracy.

41. Defendant, a sophisticated employment screening consumer reporting agency, has the capacity to employ reasonable procedures to ensure that the alleged conduct that happened here does not happen.

42. It is wholly unreasonable for Defendant to maintain procedures that it knows often lead to inaccurate consumer reporting with grave consequences.

43. Despite knowing that its procedures are unreasonable, Defendant recklessly, knowingly, and/or negligently fails to employ procedures that assure that maximum possible accuracy of consumer information compiled and published in its consumer reports.

44. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to prevent.

45. Defendant knows that its services are used to make significant consumer decisions.

46. Upon information and belief, Defendant knew or should have known that employers make decisions on employment decisions on employment status based solely on the information contained in its consumer reports.

47. Consequently, Plaintiff wasted significant time trying to resolve this issue with Uber.

48. Consequently, Plaintiff wasted significant time trying to resolve this issue with Samba.

49. As a further direct result of Defendant's conduct, Plaintiff suffered mental distress, including humiliation, embarrassment, and considerable stress from his denial in employment and having this damaging information on his consumer report.

50. Defendant's violations of the FCRA were willful. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

51. Additionally, Defendant's violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681o.

52. In any event, Defendant is liable for Plaintiff's reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

**CAUSE OF ACTION**
**COUNT I**

**Violation of the FCRA, 15 U.S.C. § 1681e**

53. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

54. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b) (emphasis added).

55. Samba violated § 1681e(b) because it failed to follow reasonable procedures to ensure the maximum possible accuracy of the information it attributed to Plaintiff in its consumer reports.

56. Specifically, Samba willfully, intentionally, recklessly, and/or negligently violated § 1681e(b) by inaccurately reporting that Case No. 24-003248, despite DMV records showing it has been rescinded, thereby failing to provide potential employers with an accurate background check.

57. Samba's misconduct was a direct and proximate cause of Plaintiff's injuries, as alleged herein.

58. Samba is therefore liable to Plaintiff for its willful and/or negligent failures to follow reasonable policies and procedures.

59. As a result of Samba's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

**COUNT II**
**Violation of the FCRA, 15 U.S.C. § 1681i**

60. Plaintiff incorporates by reference all the preceding allegations as though fully set forth herein.

61. At all times pertinent hereto, Defendant was a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(c).

62. The FCRA provides that:

> "***if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer*** and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, ***the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file*** in accordance with paragraph(5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."

15 U.S.C. § 1681i(a)(1)(a) (emphasis added)

63. On numerous occasions including on or about July 29, 2025, Plaintiff initiated a dispute with Defendant, requesting correction of the erroneous information and an updated consumer report to Plaintiff and his potential employers.

64. Defendant received Plaintiff's dispute, as evidenced by its response on or about August 4, 2025.

65. However, Defendant never adequately investigated Plaintiff's disputes, as required by the FCRA.

66. Instead, Defendant, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate information, something that any reasonable investigation would have corrected.

67. As a direct and proximate result of Defendant's refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

68. Samba's violations of the §1681i were willful.

69. Therefore, Samba is liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial, pursuant to 15 U.S.C. § 1681n.

70. Additionally, Samba's violations of § 1681i were at least negligent. Therefore, Samba is liable to Plaintiff for statutory and actual damages, pursuant to 15 U.S.C. § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a judgment:

i. Awarding Plaintiff statutory money damages, actual damages and punitive damages pursuant to 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

ii. Awarding attorneys' fees and costs as required by 15 U.S.C. §§ 1681n and/or 1681o, and other relief; and

iii. Awarding any other such relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: October 15, 2025        By:    /s/ Yitzchak Zelman
                                      MARCUS & ZELMAN, LLC
                                      701 Cookman Avenue, Suite 300
                                      Asbury Park, New Jersey 07712
                                      (732) 695-3282 telephone
                                      yzelman@marcuszelman.com
                                      *Attorney for Plaintiff*